**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANE TAYLOR,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2054** |
| | : | |
| **J. YODIS,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.**                                                                      **MAY  19 , 2026**

Plaintiff Dane Taylor, who is currently confined at SCI Phoenix, brings this *pro se* action alleging that his constitutional rights were violated.  The Court will grant Taylor's application to proceed *in forma pauperis* and will screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  As explained below, the Court will dismiss the Complaint.

**I.      FACTUAL ALLEGATIONS**[1]

Taylor's claims arise from disciplinary sanctions that were imposed upon him after an incident among inmates at SCI Phoenix.  Named as Defendants are: J. Yodis, Hearing Examiner; J. Smith, Unit Manager; and Superintendent J. Terra.  (Compl. at 3-4.)  They are sued in their individual and official capacities.  (*Id.* at 3-4, 7.)  Taylor seeks declaratory and injunctive relief, as well as money damages.  (*Id.* at 6, 19.)

On October 15, 2024, Taylor was placed in the Restricted Housing Unit ("RHU").  (*Id.* at 10.)  He was charged with assault, fighting, refusing to obey an order, and possession of contraband.  (*Id.* at 12, 34.)  He pled guilty to the fighting charge and not guilty to the others

---

[1] The following factual allegations are taken from Taylor's Complaint, which consists of a preprinted form, handwritten supplements, and exhibits.  (*See* ECF No. 2 ("Compl.") at 1-55.) The Court adopts the pagination supplied by the CM/ECF docketing system to the pleadings in this case.

because there was no confiscated item receipt ("CIR").  (*Id.* at 12.)  At a disciplinary hearing on October 17, 2024, which Taylor attended, he was sanctioned to 150 days of disciplinary custody, ninety days for the assault charge and sixty days for the possession of contraband charge, and lost his job for the refusing to obey an order charge.  (*Id.* at 10, 12, 35.)  According to Taylor, there must be a CIR to authenticate a contraband charge, which must be served with the misconduct and mentioned in the misconduct report.  (*Id.* at 12.)

Taylor appealed the sanctions imposed at the disciplinary hearing that same day, on the basis that the procedures employed were contrary to law, department directives, or regulations, and that the findings of fact were insufficient to support the decisions.  (*Id.* at 10.)  He argued that due to the alleged administrative error, the contraband charge should be dismissed, giving him only ninety days in the RHU for the assault charge.  (*Id.* at 13, 36.)  The Program Review Committee, including Defendant Smith, denied the appeal on October 24, 2024.  (*Id.* at 10, 13, 37.)  Taylor submitted a second-level appeal on November 5, 2024, which was denied by Defendant Terra on November 10, 2024.  (*Id.* at 10, 13, 38.)  Taylor submitted a Final Level Appeal to the Central Office on November 25, 2024, which also was denied.  (*Id.* at 10, 13, 39.)  Taylor again appealed to Defendant Terra on February 6, 2025, but was referred by Defendant Terra to the PRC by way of Defendant Smith.  (*See id.* at 18, 51.)  In a February 10, 2025 Inmate Request to Staff Member form directed to Defendant Smith, Taylor again insisted that the ninety-day sanction for assault expired on January 15, 2025, and that he should not be serving sixty more days for a contraband charge that he claims was revoked.  (*Id.* at 18, 52.)  Defendant Smith denied the request.  (*Id.* at 52-53.)

Based on these allegations, Taylor contends that his rights secured by the Eighth Amendment and Fourteenth Amendment[2] were violated because he spent more time in the RHU than he should have. (*Id.* at 4, 13, 19.) He claims that a Department of Corrections ("DOC") policy provides that the maximum amount of time in disciplinary custody that can be assigned per charge is ninety days.[3] (*Id.* at 14.) He further claims that Defendant Yodis ignored the absence of a CIR when initially sanctioning him to ninety days disciplinary custody on the assault charge and sixty days of disciplinary custody on the possession of contraband charge. (*Id.* at 14.) Taylor also contends that Defendant Yodis revoked the possession of contraband charge but nonetheless gave him sixty days in the RHU for the revoked charge. (*See id.* at 18.) Taylor bases this assertion, at least in part, upon a document titled "Inmate Query – Misconducts – Details" that he attached to the Complaint. (*See id.* at 14, 42.) According to Taylor, this document indicates that he was found guilty of assault, refusing to obey an order, and possession of contraband, and that he was assigned 150 days of active disciplinary segregation. (*See id.* at 14, 42.) But he also contends that the document lists "0" days for "confiscation of contraband." (*See id.* at 14, 42.) Taylor surmises that, if he was given zero days for "confiscation of contraband," he was, therefore, "illegally" given 150 days for the one assault charge. (*Id.* at 14-

---

[2] Although Taylor makes a passing reference to "official oppression" and "excessive confinement/false imprisonment," (*see* Compl. at 4, 9), a reasonable reading of his Complaint raises claims under the Eighth Amendment and Fourteenth Amendment only. In any event, passing references to legal provisions are insufficient to bring a plausible claim before the Court. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue . . . will not suffice to bring that issue before this court." (alteration in original) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

[3] Taylor states that DC-ADM 801, Inmate Discipline Procedures Manual Section 4, "Disposition of Charges and Misconduct Sanctions," provides: "assignment to disciplinary custody . . . status for a period not to exceed 90 days per misconduct charge." (Compl. at 14.)

15.)  In essence, Taylor contends that he spent sixty more days in the RHU than warranted by the charges against him.[4]

## II.      STANDARD OF REVIEW

The Court will grant Taylor leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.[5]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim.  The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As Taylor is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot

---

[4] Taylor also references what he describes as a similar situation that he experienced in 2023 while confined at SCI Pine Grove in which he was not initially given a CIR with a misconduct that included a contraband charge.  (*See* Compl. at 15-16.)  He also contends he learned that another inmate at SCI Phoenix was written up for similar charges and not given a CIR.  (*Id.* at 17-18.)

[5] However, since Taylor is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

survive dismissal just by alleging the conclusion to an ultimate legal issue."). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

Taylor brings claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Even upon a liberal reading of the Complaint, however, Taylor has failed to allege a plausible basis for any § 1983 claim.

### A. Due Process Claims

Taylor asserts that Defendants violated his right to procedural due process by detaining him in the RHU longer than warranted by the charges against him. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). It is well settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (stating

that the United States Constitution itself does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement). However, a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations in some circumstances. *Id.* at 222. When considering whether a liberty interest is implicated in the context of prison regulations, a court's focus must be on the "the nature of the deprivation" experienced by the prisoner. *Sandin v. Conner*, 515 U.S. 472, 481 (1995). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . [b]ut these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84 (citations omitted). "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin*, 515 U.S. at 493-84). As the United States Supreme Court has explained, "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Id.* at 485. Thus, "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Sandin*, 515 U.S. at 486).

"In deciding whether a protected liberty interest exists under *Sandin*, [a court] . . . consider[s] the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Here, Taylor alleges that he was held in the RHU for sixty days longer than he should have been. (*See* Compl. at 10-11.) Even assuming

6

*arguendo* that Taylor spent sixty days longer in the RHU than was called for by the charges he was found to have violated, that is not the type of atypical or significant hardship sufficient to trigger due process concerns. *See Smith*, 293 F.3d at 654 (stating no liberty interest triggered by seven-month placement in administrative confinement); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed . . . by a court of law" and does not constitute a due process violation (quotation marks omitted)); *see also Blount v. Mason*, No. 23-2835, 2024 WL 1045226, at *2 (3d Cir. Mar. 11, 2024) (*per curiam*) (stating that eight month placement in RHU by itself did not create a liberty interest and did not implicate due process); *Murray v. Smithbower*, No. 21-2156, 2023 WL 5378839, at *3 (3d Cir. Aug. 22, 2023) (*per curiam*) (affirming dismissal of due process claim where plaintiff was sanctioned to 135 days in disciplinary custody); *Mutschler v. Tritt*, 765 F. App'x 653, 655 (3d Cir. 2019) (*per curiam*) (stating inmate failed to allege he was deprived of a protected liberty interest based on 180 days' confinement in the RHU). Since an additional sixty-days confinement in the RHU is not sufficient to establish the kind of "atypical" deprivation of prison life that would trigger due process protections, Taylor's allegations do not give rise to a plausible basis for a constitutional claim. Accordingly, the due process claims based on Taylor's alleged additional time in the RHU will be dismissed with prejudice.[6]

---

[6] To the extent Taylor seeks to present a due process claim based on the alleged violation of a DOC policy, such claim is not plausible. Even assuming *arguendo* that the Defendants violated the DOC policy referenced by Taylor, violations of internal prison policies do not, by themselves, rise to the level of constitutional violations. *See Steele v. Cicchi*, 855 F.3d 494, 508-09 (3d Cir. 2017) (stating a violation of prison policy is not, in itself, a constitutional violation); *United States v. Fattah*, 858 F.3d 801, 813-14 (3d Cir. 2017) (stating that a "violation of internal policy alone does not amount to a violation of constitutional due process" because government policies and guidelines "do not themselves create rights" (citing *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010)); *Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (*per*

**B.**      **Eighth Amendment Claims**

To the extent that Taylor also alleges that his Eighth Amendment rights were violated,

the allegations in the Complaint do not provide a basis for such a claim.  Conditions of

confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if

they satisfy two criteria.  First, the conditions "must be, objectively, sufficiently serious" such

that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized

measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks

and citations omitted).  Second, the official responsible for the challenged conditions must

exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of

deliberate indifference to inmate health or safety."  *Id.* (quotation marks and citations omitted);

*see also Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (same). "[P]unitive

isolation is not necessarily unconstitutional, but it may be, depending on the duration of the

---

*curiam*) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable").

Furthermore, to the extent Taylor's Complaint can be construed as seeking to present a claim based on an "administrative error" during the disciplinary process, (*see* Compl. at 13), his allegations do not rise to the level of a due process violation.  Indeed, even "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process." *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*) (citing *Smith*, 293 F.3d at 653-54).  This is because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*) (citation omitted); *see also Smith*, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."); *Toussaint v. Good*, 276 F. App'x 122, 124 (3d Cir. 2008) (*per curiam*) ("[T]o the extent that Toussaint's claim is based on 'false' misconducts that resulted in sixty-and ninety-day stays in the RHU, such stays do not constitute an 'atypical and significant hardship' to trigger due process protections.").  Here, Taylor had the opportunity to challenge and confront the misconduct report through the grievance process, satisfying the procedural due process requirements.

confinement and the conditions." *Bailey v. Kauffman*, No. 21-3357, 2022 WL 1115136, at *2 (3d Cir. Apr. 14, 2022) (*per curiam*) (alteration in original) (citation omitted).

Taylor's placement in the RHU, and the process that was used in determining that placement and in maintaining that placement for 150 days, do not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Griffin*, 112 F.3d at 709 (noting that placement in administrative custody for fifteen months did not create an Eighth Amendment claim where the plaintiff failed to present "evidence that he was denied basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety"); *see also Bailey*, 2022 WL 1115136, at *2 (finding no Eighth Amendment violation because inmate did not allege that he was denied any of life's necessities while in disciplinary custody, nor did he allege that he suffered the infliction of pain or injury, or a deliberate indifference to the risk that it might occur, and forty-five days in disciplinary custody was not a dramatic departure from accepted standards for conditions of confinement for inmates and was typical of the disciplinary housing that a prisoner would reasonably anticipate receiving at some point during his incarceration); *Jenkins v. Murray*, 352 F. App'x 608, 611 (3d Cir. 2009) (*per curiam*) (approving dismissal of Eighth Amendment claim based on inmate's placement in administrative custody for three months where inmate failed to "allege that he was denied any basic human need"). Accordingly, the Court will dismiss Taylor's Eighth Amendment claims.

## IV.   CONCLUSION

The Court will grant Taylor leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Leave to amend will not be given, as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Taylor's motion for appointment of counsel, (*see* ECF

No. 3), will be denied as moot.  An appropriate Order regarding dismissal follows, which shall be entered separately.  *See* Fed. R. Civ. P. 58(a).

BY THE COURT:

_____

**MARY KAY COSTELLO, J.**

10